**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

ANTHONY ROWELL,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )          No. 4:23-CV-764 NCC
                                   )
MISSOURI DEPT. OF CORR., et al.,   )
                                   )
            Defendants.            )

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Anthony Rowell, an inmate at

Farmington Correctional Center (FCC), for leave to commence this civil action without prepaying

fees or costs. Having reviewed the motion and the financial information submitted in support, the

Court has determined to grant the motion, and assess an initial partial filing fee of $10.28.

Additionally, for the reasons discussed below, the Court will dismiss this action pursuant to 28

U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is

required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison

account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial

filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account,

or (2) the average monthly balance in the prisoner's account for the prior six-month period. After

payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20

percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The

agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $51.41. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $10.28.

### Legal Standard on Initial Review

This Court is required to review a complaint filed in forma pauperis and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Liberal construction" means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff filed the complaint pursuant to 42 U.S.C. § 1983 against the Missouri Department of Corrections/Eastern Reception Diagnostic and Correctional Center (ERDCC) and Functional Unit Manager, Jason Turner, at ERDCC. Plaintiff sues defendants in their official capacities only.

Plaintiff's complaint and accompanying exhibits are two hundred and ninety-seven (297) pages in length. Additionally, most of plaintiff's documents are handwritten, difficult to read and appear to contain repetitive claims. From a review of plaintiff's documents, it appears he is complaining that defendant Turner, in November of 2021, placed a "dangerous person" in his cell at ERDCC.[1] Plaintiff claims that his cellmate threatened him and gave him a black eye. Plaintiff blames defendant Turner for failing to protect him from his cellmate's actions. However, plaintiff

---

[1]Plaintiff is serving a twenty-one (21) year sentence for two counts of kidnapping in the second degree, rape in the second degree and sodomy in the second degree.

fails to allege that defendant Turner was aware, prior to placing the individual in plaintiff's cell, that the individual had specifically threatened plaintiff. Rather, he makes a conclusory claim that the cellmate was simply known to "victimize sex offenders." Although plaintiff alleges that he received a black eye and broken nose around this time, he does not indicate that these injuries came from his cellmate. Moreover, he asserts that he and his cellmate became friend after getting to know one another, and his cellmate began to look out for him.

In addition to the aforementioned claim, plaintiff appears to bring a variety of different claims against the Missouri Department of Corrections relating to "hate crimes against sex offenders." These claims, however, do not appear to be related to his "failure to protect" claim against defendant Jason Turner. The the claims are scattered throughout pages 5-16 of his complaint, as well as in Exhibits A, B and C. Because these claims are unrelated to his claims against defendant Turner and the events of November 2021, the Court will sever and dismiss those claims, without prejudice. *See* Federal Rule of Civil Procedure 18 and 20.

Plaintiff seeks monetary relief in this action.

### Discussion

The Court finds that plaintiff's claims against the State of Missouri and Functional Unit Manager Jason Turner, brought pursuant to 42 U.S.C. § 1983, are subject to dismissal.

### A.  State of Missouri/ERDCC[2]

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials

---

[2]ERDCC is an agency of the Missouri Department of Corrections.

acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). As the State of Missouri is not a "person," plaintiff is missing an essential element of a § 1983 claim. Therefore, the claims against the State of Missouri are subject to dismissal.

Second, plaintiff's claims against these entities, and therefore claims against the State of Missouri, are barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

The immunity provided by the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal). There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to

Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe ... that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles ... within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In short, sovereign immunity prevents plaintiff from suing the State of Missouri for any type of relief, be it monetary or injunctive. Furthermore, he has not demonstrated that an exception to sovereign immunity is present here. Therefore, for this reason as well, his claims against the State of Missouri must be dismissed.

**B. Functional Unit Manager Jason Turner**

A plaintiff can bring a § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). Plaintiff asserts that he is bringing this action against defendant Turner in his official capacity. An official capacity claim against Turner, who is employed by ERDCC, is a claim against the State of Missouri. To the extent that plaintiff is suing for monetary damages, the official capacity claim must be dismissed because the State of Missouri is not a "person" under 42 U.S.C. § 1983. *See Will*, 491 U.S. at 71 (explaining that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983"); and *Kruger*, 820 F.3d at 301 (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Likewise, a claim for monetary damages against a state official acting in an official capacity is barred by the Eleventh Amendment. *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

To the extent that plaintiff seeks injunctive relief, he must demonstrate the liability of the State of Missouri for harming him. *See Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official ... policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"); *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989). Thus, there are three ways in which plaintiff can prove the liability of the State of Missouri.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." *See Corwin v. City of Independence, Mo.,* 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.,* 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.,* 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." To do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a liability claim against a governmental entity by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris,* 489 U.S.

378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the governmental entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.,* 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.,* 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk,* 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented any facts supporting the proposition that the State of Missouri has harmed him due to an unconstitutional policy, custom, or failure to train.

First, plaintiff has not established the existence of an unconstitutional policy regarding the allegations relating to the occurrence of November 2021. Certainly, his assertions do not allow the Court to infer that the allegations relating to the placement of the "dangerous man" in his cell in November of 2021 was because of an unconstitutional policy, either in its entirety or as applied to him. Rather than present allegations in his pleadings focus on the actions of defendant Turner, who he believes acted against him, individually.

Second, plaintiff has not demonstrated that he was harmed by an unconstitutional custom, as he has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [State of Missouri's] employees," much less that policymakers

were deliberately indifferent to or tacitly authorized such misconduct. Far from describing a "persistent pattern of unconstitutional misconduct," plaintiff's allegations do not adequately describe even a single instance in which a constitutional violation occurred.

Third, plaintiff has not properly alleged that the State of Missouri was deliberately indifferent in failing to train or supervise its employees. To show deliberate indifference, plaintiff must prove that the state "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Typically, this is done by alleging a "pattern of similar constitutional violations by untrained employees." Plaintiff's facts do not show a repeated design utilized by defendants to violate his constitutional rights.

Finally, to the extent that plaintiff might seek to hold the State of Missouri liable for the actions of its employees, the Court notes that a governmental entity cannot be held liable under 42 U.S.C. § 1983 simply because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.,* 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a [governmental entity] ... cannot be liable on a respondeat superior theory").

## C. Plaintiff's Claims Relating to "Hate Crimes" Against Sex Offenders

As noted above, plaintiff alleges over the course of over two-hundred and ninety (290) pages, claims relating to what he perceives as "hate crimes" against sex offenders incarcerated at the Missouri Department of Corrections. He mentions, for example, that: (1) sex offenders are unable to walk in the prison yard without being subject to robbery and/or threats of violence "according to the bylaws of MDOC prison gangs; (2) sex offenders are often denied protective custody and placed in administrative segregation instead; (3) correctional officers spit in sex offenders' food; (4) sex offenders are denied property without cause; (5) mail is denied to sex offenders without cause; (6) case managers refuse to process sex offenders' grievances; (7) staff

give rosters of purported sex offenders to gang members who are inmates in MDOC; (8) staff make

sex offenders walk around in boxers with open flies; (9) sex offenders suffer verbal abuse from

correctional officers and other inmates; and (10) sex offenders have their emergency buttons

disabled in their cells.

Unfortunately, plaintiff has improperly joined these claims brought against the Missouri

Department of Corrections. Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder

of defendants, and provides:

> Persons . . .  may be joined in one action as defendants if: (A) any
> right to relief is asserted against them jointly, severally, or in the
> alternative with respect to or arising out of the same transaction,
> occurrence, or series of transactions or occurrences; and (B) any
> question of law or fact common to all defendants will arise in the
> action.

Therefore, a plaintiff cannot join, in a single lawsuit, a multitude of claims against the

Missouri Department of Corrections that are related to events arising out of different occurrences

or transactions. In other words, "Claim A against Defendant 1 should not be joined with unrelated

Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated

claims against different defendants belong in different suits, . . . [in part] to ensure that prisoners

pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of

frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Id.*

For this reason, the Court will sever plaintiff's claims relating to "hate crimes" against sex

offenders incarcerated at the Missouri Department of Corrections.[3] These claims will be dismissed,

without prejudice.

---

[3]Plaintiff should be aware that if he attempts to bring these claims in a second lawsuit, he may only bring
claims on his own behalf. As a pro se litigant he may not bring claims on behalf of others. *See* 28 U.S.C. §
1654 (stating that in all United States courts, "the parties may plead and conduct their own cases personally
or by counsel"); *Jones ex rel. Jones v. Correctional Medical Services, Inc.,* 401 F.3d 950, 952 (8th Cir.
2005) (stating that "a non-attorney…may not engage in the practice of law on behalf of others");

## Conclusion

For all the reasons discussed above, plaintiff has failed to state an official capacity claim against defendant Jason Turner, and plaintiff's complaint is subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that, within twenty-one (21) days of the date of this order, plaintiff must pay an initial filing fee of $10.28. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim and/or for legal frivolousness. *See* 28 U.S.C. § 1915(e)(2)(B). A separate Order of Dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's claims relating to "hate crimes" against sex offenders brought against the Missouri Department of Corrections are **SEVERED** and **DISMISSED** without prejudice.

---

*Iannaccone v. Law,* 142 F.3d 553, 558 (2nd Cir. 1998) (stating that "because pro se means to appear for one's self, a person may not appear on another's behalf in the other's cause…A person must be litigating an interest personal to him"); and *Lewis v. Lenc–Smith Mfg. Co.,* 784 F.2d 829, 830 (7th Cir. 1986) (stating that a person who is not licensed to practice law may not represent another individual in federal court).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED AS MOOT**.

A separate Order of Dismissal shall accompany this Opinion, Memorandum and Order.

 Dated this 14th day of June, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE